**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JAMES HOLDEN, ) | CASE NO. 1:12-cv-02305 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| STATE FARM FIRE & CASUALTY CO., ) | |
| ) | |
| Defendant. ) | **MEMORANDUM OPINION & ORDER** |
| ) | |

### I. Procedural Background

On September 13, 2012, this matter was removed from the Cuyahoga County, Ohio Court of Common Pleas. (ECF No. 1.) Plaintiff James Holden ("Holden") seeks a declaratory judgment against Defendant State Farm Fire and Casualty Company ("State Farm"). (ECF No. 1-1 at ¶8.) Specifically, Holden alleged that he is an insured of State Farm; that he has been joined as a third party defendant in an action in Cuyahoga County Court of Common Pleas; that he is entitled to a defense and indemnity under a policy with State Farm; and, that State Farm has breached the policy by wrongfully refusing to defend him in the state court. *Id.* at ¶¶1-2, 4-6.

On December 19, 2012, Holden and State Farm filed cross motions for summary judgment. (ECF Nos. 12 & 13.) The matter is now fully briefed.

### II. Summary of Facts

There are few "facts" in this matter, as the case revolves around the allegations made against Holden in a state court action. The parties filed a Stipulation of Facts, and attached

thereto documents represented to be true and accurate copies of the complaint, answer, counterclaim, third-party complaint, and Cheryl Tieche's answers to interrogatories filed in the underlying state court action. (ECF No. 11.) The parties further attached what they represent to be true and accurate copies of homeowner and rental dwelling policies issued to Holden and his wife by State Farm. *Id*.

The state action stems from a landlord-tenant relationship. State court plaintiffs Gary Koryta and International Industrial Techniques, Inc. ("IIT") are the owners of a building located at 704 Broadway Avenue, Bedford, Ohio. (ECF No. 11-1 at ¶14.) Defendant/Third Party Plaintiff Cheryl Tieche leased the property to operate a business, Lauray's Studio of Dance, previously owned by Laura Clegg who had passed away. *Id*. at ¶¶13-24. Tieche allegedly failed to pay rent for nine months and breached the lease agreement in other respects. *Id*. at ¶¶ 26-31. Koryta and IIT assert multiple claims against Tieche and others for breach of contract, conversion, unjust enrichment, fraud, and tortious interference with a business relationship. In addition to filing an answer and counterclaims against Kortya and IIT, Tieche filed a third-party complaint against the City of Garfield Heights and four individuals, including Holden. (ECF No. 11-2 at 17-28.) With respect to Holden, the third-party complaint alleges as follows:

> 67. Koryta subsequently made contact and continued contact with Third Party Defendants, Jenni Hankey and James Lee Holden. Hankey was allegedly going to take over Lauray's Studio of Dance.
>
> 68. Under information and belief, Koryta and Hankey have formed a personal relationship and business relationship. Koryta has repeatedly attempted to gain access to Tieche's proprietary customer lists in an effort to benefit himself and Hankey.
>
> 69. Koryta, Hankey and Holden all went through the premises, accessed the files and computer of Tieche, and otherwise examined the property belonging to Tieche.

2

70. At this same time Koryta and Hankey, with the assistance of Holden began to disseminate false and incorrect information regarding the status of Lauray's Studio of Dance as being either, closed or taken over by Hankey.

71. Also, at this same time, Hankey was operating under an unregistered entity known as Pulse Studio of Dance.

72. The actions of Koryta, Hankey and Holden constitute a violation of Tieche's privacy and constitutional rights, a tortuous [sic] interference, with the contractual relationships Tieche maintains with her clients, and civil conspiracy.

73. Koryta, Hankey and Holden engaged in a pattern of tortuous [sic] interference with business relationships that Tieche maintained. Hankey and Holden knew of the business relationships or contracts and through intentional and improper actions taken to [sic] prevented a contract formation, or procured a contractual breach, or terminated a business relationship without privilege to do so and thereby causing damages Tieche.

74. Koryta, Hankey and Holden engaged in a civil conspiracy by their malicious actions directed toward Tieche, resulting in damages.

75. Koryta, Hankey and Holden intentionally and deliberately inflicted emotional distress on Tieche by violating her rights, or by abusing the lawful process by unlawful purpose, or by violating Tieche's constitutional rights, or by falsely claiming Tieche had committed illegal acts or by conspiring against Tieche, or by interfering with Tieche's civil rights by threats, coercion, or intimidation, or knew or should have known that emotional distress was the likely result of their conduct.

76. Koryta, Hankey and Holden's conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

77. The actions of Koryta, Hankey and Holden were the cause of Tieche's distress.

78. The emotional distress sustained by Tieche was severe and of a nature that no reasonable person could be expected to endure.

79. As a result of Koryta, Hankey and Holden's extreme and outrageous conduct, Tieche was, is, and, with a high degree of likelihood, will continue to be emotionally distressed due to the intentional exclusion.

> 80. As a result of Koryta, Hankey and Holden's extreme and outrageous conduct, Tieche has suffered and will continue to suffer mental pain and anguish, severe emotional trauma, embarrassment, and humiliation.
>
> 81. Koryta, Hankey and Holden continually negligently inflicted emotional distress on Tieche.
>
> 82. Tieche was, is, and, with a high degree of likelihood, will continue to be inflicted with emotional distress due to the negligence of Koryta, Hankey and Holden.

(ECF No. 11-1.) The parties dispute whether any of these claims result in coverage or trigger the duty to defend under the State Farm policies.

### III. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and states:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

In considering summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

Under Ohio law, "[a]n insurance policy is a contract whose interpretation is a matter of law." *Lager v. Miller-Gonzalez*, 2008-Ohio-4838, 120 Ohio St. 3d 47, 49, 896 N.E.2d 666, 669 (Ohio 2008); *see also Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.*, 667 F.3d 669, 676 (6th Cir. 2011) ("The presence of undefined terms in a policy does not convert the issue into a

question of fact so as to preclude summary judgment.") (citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 652 N.E.2d 684, 686 (Ohio 1995)). The central issue presented is the proper interpretation of two insurance policies. Such a question is "a matter of law conducive to determination on cross-motions for summary judgment." *Montclair Condominiums Ass'n, Inc. v. Cmty. Ass'n Underwriters of Am., Inc.*, 2009 WL 2043869 (M.D. Tenn. July 9, 2009)

### IV. Law and Analysis

#### A. Breach of Contract

The essence of Holden's claim is that State Farm is in breach of contract. Specifically, Holden asserts that State Farm had a duty to defend him in the underlying state action pursuant to the homeowners policy and/or the rental dwelling policy. (ECF No. 1-1.) State Farm does not dispute that "[it] issued a policy of homeowners insurance to Holden and his wife, insuring their home in Newbury, Ohio." (ECF No. 13 at 5.) Nor does State Farm dispute that it "also issued a rental dwelling policy to Holden and his wife ... [which] [t]he policy declarations identify ... as 290 East 211th Street, Euclid, Ohio 44123-1808." *Id*. at 6. State Farm, however, argues that it has no duty to defend Holden against the causes of action advanced by Tieche in state court.

##### 1. Duty to Defend under Ohio Law

In Ohio, "[t]he scope of the allegations in the complaint against the insured determines whether an insurance company has a duty to defend the insured." *Auto-Owners Ins. Co. v. Ill. Nat'l Ins. Co.*, 2013 U.S. App. LEXIS 637 (6th Cir. Jan. 7, 2013) (quoting *Ohio Gov't Risk Mgmt. Plan v. Harrison*, 115 Ohio St. 3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, 1160 (Ohio

2007)). Ohio courts have found that:

> An insurer's duty to defend is broader than and distinct from its duty to indemnify. *Socony-Vacuum Oil Co. v. Continental Cas. Co.* (1945), 144 Ohio St. 382, 29 O.O. 563, 59 N.E.2d 199, paragraph one of the syllabus; *W. Lyman Case & Co. v. Natl. City Corp.* (1996), 76 Ohio St.3d 345, 347, 1996 Ohio 392, 667 N.E.2d 978. An insurer has an absolute duty to defend an action when the complaint contains an allegation in any one of its claims that ***could arguably be covered by the insurance policy***, even in part and even if the allegations are groundless, false, or fraudulent. *Sanderson v. Ohio Edison Co.* (1994), 69 Ohio St.3d 582, 1994 Ohio 379, 635 N.E.2d 19, at paragraph one of the syllabus. Once an insurer must defend one claim within a complaint, it must defend the insured on all the other claims within the complaint, even if they bear no relation to the insurance-policy coverage. *Preferred Mut. Ins. Co. v. Thompson* (1986), 23 Ohio St.3d 78, 80, 23 OBR 208, 491 N.E.2d 688. ***An insurer need not defend any action or any claims within the complaint when all the claims are clearly and indisputably outside of the contracted policy coverage***. *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 113, 30 OBR 424, 507 N.E.2d 1118.

*City of Sharonville v. Am. Emplrs. Ins. Co.*, 2006-Ohio-2180, 846 N.E.2d 833, 109 Ohio St. 3d 186, 189 (Ohio 2006) (emphasis added); *see also Ferro Corp. v. Cookson Group*, 561 F. Supp. 2d 888, 898 (N.D. Ohio 2008) ("There is no duty to defend 'if there is no set of facts alleged in the underlying complaint against the insured that, if proven true, would invoke coverage.'") (*quoting Cincinnati Indem. Co. v. Martin*, 85 Ohio St. 3d 604, 605, 1999 Ohio 322, 710 N.E.2d 677 (1999)); *Ward v. United Foundries, Inc.*, 2010 Ohio App. LEXIS 5537, 2010-Ohio-6694 at ¶82 (Ohio Ct. App., May 3, 2010) (finding that because the complaint alleged an intentional tort claim against the employer, a claim clearly excluded from coverage, the insurer was not required to defend nor indemnify under the terms of the policy); *Beaverdam Contr. v. Erie Ins. Co.*, 2008 Ohio App. LEXIS 4136, 2008-Ohio-4953 at ¶20 (Ohio Ct. App., Sept. 29, 2008) ("Only if there is no possibility of coverage under the policy based on the allegations in the complaint will the insurer not have a duty to defend the action.") (quoting *Erie Ins. Exchange v. Colony Dev. Corp.*, 136 Ohio App.3d 406, 413, 736 N.E.2d 941 (Ohio Ct. App. 1999).

### a. Rental Policy

State Farm concedes that it issued a rental dwelling policy to Holden and his wife. (ECF No. 13 at 6.) The parties stipulated that Exhibit 4 is a true and correct copy of the policy. (ECF No. 11 at ¶4.) The policy renewal certificate identifies the covered rental property as "290 E 211TH ST EUCLID OH 44123-1808." (ECF No.11-4, Page ID #172.) Section II of the policy sets out liability coverages. Holden's policy carried business liability coverage "Coverage L," which the policy defined as follows:

> If a claim is made or a suit is brought against any **insured** for damages because of **bodily injury, personal injury,** or **property damage** to which this coverage applies, caused by an **occurrence**, and which arises from the ownership, maintenance, or use of the **insured premises**, we will:
>
> 1. pay up to our limit of liability for the damages for which the insured is legally liable; and
>
> 2. provide a defense at our expense by counsel of our choice....

(ECF No. 11-4, Page ID #184) (emphasis in original).

Before beginning the inquiry whether any of the claims against Holden could arguably be construed as triggering coverage and the duty to defend, the Courts notes that "[a]n insurance policy is a contract whose interpretation is a matter of law." *City of Sharonville*, 109 Ohio St. 3d at 187 (*citing Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph one of the syllabus (Ohio 1978)); *accord Schwartz Manes Ruby & Slovin, L.P.A. v. Monitor Liab. Managers, LLC*, 483 Fed. Appx. 241, 244 (6th Cir. 2012); *John Hancock Life Ins. Co. v. Ufer*, 2013 U.S. Dist. LEXIS 7157 (N.D. Ohio Jan. 17, 2013). The terms of the insurance policy must be given "their plain and ordinary meaning." *Id*. (*citing Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 167-168, 436 N.E.2d 1347 (Ohio 1982)). However, if the

terms are ambiguous (*i.e.* susceptible to more than one reasonable interpretation), they "will be construed strictly against the insurer and liberally in favor of the insured." *Id*. (*quoting King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus (Ohio 1988)).

State Farm asserts that the insured property is located at 290 East 211th Street, Euclid, Ohio 44123, and points out that it is a different property from the one rented to Tieche by Koyta and IID, which is located in Bedford, Ohio. (ECF No. 13 at 7.) State Farm argues that an occurrence must arise from the ownership, maintenance, or use of the insured premises. *Id*. at 13. The Court agrees that the policy language plainly includes such a requirement. State Farm further avers that the phrase "arise from" is clear and unambiguous. *Id*. In support, State Farm quotes the following passage from an Ohio appellate court:

> In reaching this conclusion, we see no ambiguity in the policy's exclusionary language and, therefore, no basis for construing it against Utica. The only conceivable ambiguity involves the phrase "arises out of." In our view, however, this phrase is unambiguous. "Arise" means "[t]o originate; to stem (from)" or "[t]o result (from)[.]" Black's Law Dictionary 115 (8th Ed. 2004). [Note 2] Therefore, the Utica policy does not pay for a bodily injury that originates, stems, or results from the operation or supervision of an automobile. In the present case, the injury to the Lehrners did originate, stem, or result from the operation or supervision of Jock's automobile. We find no ambiguity. [Note 3]
>
> [Note 2] See also *Stickovich v. Cleveland*, 143 Ohio App.3d 13, 37, 2001 Ohio 4117, 757 N.E.2d 50 ("This court has held that arising out of means 'flowing from' or 'having its origin in.' * * * The term 'arising out of' has also been defined to mean 'originating from,' 'growing out of,' or 'flowing from.' * * * The term 'arising out of' does not require that the conduct be the proximate cause of the injury, only that it be causally related.").
>
> [Note 3] Even if it might be argued that the phrase "arises out of" contains some ambiguity in the abstract, we see no reasonable interpretation of those words that would permit coverage under the facts of this case. Regardless of whether a hypothetical scenario might be envisioned in which the phrase would be ambiguous, the present case presents no such situation. The injury to the Lehrners did "arise out of" the operation or supervision of Howard Jock's car under any reasonable interpretation of those words.

*Lehrner v. Safeco Insurance/American States Ins. Co.*, 872 N.E.2d 295, 171 Ohio App. 3d 570, 580 (Ohio Ct. App., 2007).

Holden has failed to raise any real argument that the allegations in Tieche's complaint somehow arise from the ownership, maintenance, or use of the property located at 290 East 211th Street, Euclid, Ohio. The Court agrees that there is nothing ambiguous about this specific provision of the policy; and, therefore, the phrase is interpreted by its plain and ordinary meaning. *See, e.g., Bondex Int'l, Inc.*, 667 F.3d at 677 ("Where the policy language sets forth the relevant coverages and exclusions in unambiguous terms, we must apply the terms as written, according to their 'plain and ordinary meaning.'") (citations omitted). There is no possibility of coverage under the rental policy based on the allegations in Tieche's complaint, as there is no nexus or relation to the insured premises. Because an insurer need not defend against claims when all the claims are clearly and indisputably outside of the contracted policy coverage, State Farm has not beached its duty to defend under the rental policy.

### b. Homeowners' Policy

State Farm also does not dispute that it issued a policy of homeowners' insurance to Holden and his wife. (ECF No. 13 at 5.) The parties stipulated that Exhibit 3 is a true and correct copy of the policy. (ECF No. 11 at ¶3) The policy renewal certificate identifies the home as "15160 AUBURN RD NEWBURY OH 44065-9736." (ECF No.11-3, Page ID #135.) Section II of the policy discusses liability coverages. *Id*. at Page ID #153. Holden's policy carried personal liability coverage "Coverage L," which the policy defined as follows:

> If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

9

1. Pay up to our limit of liability for the damages for which the insured is legally liable; and

2. Provide a defense at our expense by counsel of our choice. We may make an investigation and settle any claim or suit that we decide is appropriate....[1]

(ECF No. 11-3, Page ID #153) (emphasis in original).

The relevant terms are defined in the policy as follows:

1. **"bodily injury"** means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom.

    **Bodily injury** does not include:

    ***

    c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

    ***

8. **"property damage"** means physical damage to or destruction of tangible property, including loss of use of this property....

(ECF No. 11-3, Page ID #139-140.)

Holden asserts that Tieche's complaint against him essentially avers actions for negligence, trespass, and invasion of privacy. (ECF No. 12-1 at 2.) Holden's motion, however, fails to make any meaningful argument as to how any of these claims resulted in bodily injury or property damage, and largely ignores the language of the insurance policy. Holden does assert that "[a] homeowners' policy provides a duty to defend allegations of invasion of privacy" (ECF No. 12-1 at 9), and relies upon an Ohio appellate decision in support. *See Cincinnati Ins. Co. v.*

---

[1] Liability "Coverage M," which allows for "Medical Payments To Others" also requires that the medical expenses be caused by an "accident" resulting in "bodily injury." (ECF No. 11-3, Page ID #153.)

10

*Bentley*, 1984 Ohio App. LEXIS 10975 (Ohio Ct. App., Sept. 28, 1984). Holden's reading of the *Bentley* decision is untenable. That decision, while addressing an insurer's duty to defend, revolved entirely around the issue of whether an exclusion against expected or intended injuries negated the duty to defend where the underlying complaint alleged intentional conduct, including an assault, but was silent as to whether there was an intent to injure. *Bentley*, 1984 Ohio App. LEXIS 10975.

Holden also relies on another Ohio appellate decision which noted that "[t]aking each fact as true within appellants' complaint, it is not clear whether or not the complaints made in the defamation and invasion of privacy suit against the Swords entitle them to a defense by Allstate." *Master v. O'Malley*, 1996 Ohio App. LEXIS 1420 (Ohio Ct. App., Cuyahoga County Apr. 4, 1996). First, the above language is *dicta*, as the actual issue in controversy therein was whether the appellants could challenge their insurance company's decision to defend another policy holder. *Id*. at *7. Moreover, the *Master* decision is distinguishable, as there is no indication that the policy language at issue there bears any similarity to the policy language in the case at bar. In other words, a finding by one court that an insurer had a duty to defend its insured against an invasion of privacy action is immaterial to another action unless the contract language used in the two cases are similar.

For this reason, Holden's reliance on *Great Am. Ins. Co. v. Hartford Ins. Co.*, 621 N.E.2d 796, 85 Ohio App. 3d 815 (Ohio Ct. App. 1993) and *United States Fire Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 511 N.E.2d 127, 31 Ohio App. 3d 270 (Ohio Ct. App., 1986) is also misplaced. In *Great Am. Ins. Co.*, the court found that "[t]he term at issue in the instant case is 'personal injury,' which is unambiguously defined to include the offenses of defamation and

11

invasion of privacy." 85 Ohio App. 3d at 820. That policy defined "personal injury" to include "wrongful entry or eviction or other invasion of the right of private occupancy," as well as a "publication or utterance ... in violation of an individual's right to policy." *Id*. at 819-20. In *United States Fire Ins. Co.*, the policy at issue *included* coverage for employment-related claims for libel, slander and invasion of privacy. 31 Ohio App. 3d at 272. By contrast, the term at issue here is "bodily injury," which is defined as "physical injury, sickness, or disease" and which specifically *excludes* "emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury." As such, the above cases are inapposite.

In his opposition brief, Holden also contends that State Farm is not permitted to deny a request to defend without an investigation. (ECF No. 14 at 2.) None of the cases cited by Holden establish any judicially created duty to investigate before an insurer declines to defend an action, especially where the claims are not arguably or potentially within the scope of coverage. Holden also asserts that the language in the rental policy and the homeowner policy are not identical. Holden avers that:

> State Farm's policies when reviewed together create an ambiguity. The rental policy uses the term "personal injury" in lieu of bodily injury and, indeed, defines personal injury to include most of Tieche's claims (e.g., defamation, invasion of privacy, trespass, etc.). It cannot be held that an insured and policyholder, who has two policies that are both generally homeowners policies, has to be subject to a key term being defined in two different ways, especially when one definition would potentially preclude coverage.

(ECF No. 14 at 2-3.)

First, Holden is mistaken that both policies are essentially homeowners policies, as the rental policy includes liability coverage for "business liability," whereas the homeowners policy

12

only contains liability coverage for "personal liability." (ECF Nos. 11-3 & 11-4, Page ID #153, 184.) Furthermore, the rental policy does not use the term personal injury in lieu of bodily injury, as both policies cover damages stemming from bodily injury (as well as property damage), but only the rental policy covers a third category – personal injury. *Id*. However, as discussed above, the rental policy requires that damages in any of these categories stem from an occurrence that arises from the ownership, maintenance, or use of the rental property – an allegation that is plainly not present here. The Court is baffled by Holden's purported reliance on *American Financial Corp. v. Fireman's Fund Ins. Co.*, 239 N.E.2d 33, 15 Ohio St. 2d 171 (Ohio 1968) and *Riverside Ins. Co. v. Wiland*, 474 N.E.2d 371, 16 Ohio App. 3d 23 (Ohio Ct. App. 1984), as neither of these decisions involved interpretation of policy language contained in two separate and distinct policies issued by the same insurer.

Finally, Holden has not identified any ambiguity in the language of the policy. In fact, Holden's briefs consistently ignore the language contained in the policy. Moreover, even if some ambiguity were identified, Holden has failed to make a credible argument that Tieche's allegations against him could in any way be construed as alleging physical bodily injury (which does not include emotional/mental distress, anguish, or humiliation) or physical damage or destruction of tangible property. Because an insurer need not defend against claims when all the claims are clearly and indisputably outside of the contracted policy coverage, State Farm has not beached its duty under the homeowners' policy.

## V. Conclusion

After a review of Tieche's third-party complaint and the policy language, the Court finds that the allegations contained in the complaint are clearly and indisputably outside of the

contracted policy coverage. With respect to the rental policy, none of Tieche's claims against Holden arguably or potentially arise from the ownership, maintenance, or use of the insured premises. With respect to the homeowners' policy, none of the claims arguably or potentially arise from bodily injury or property damage as those terms are defined.

For the foregoing reasons, Defendant State Farm's Motion for Summary Judgment (ECF No. 13) is GRANTED and Plaintiff Holden's Motion for Summary Judgment (ECF No. 12) is DENIED.

IT IS SO ORDERED.

/s/ Greg White<br>U.S. Magistrate Judge

Date: April 29, 2013